UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| KEVIN BENNETT,<br><br>    Plaintiff,<br><br>  v.<br><br>MARK SEVIER, et al.,<br><br>    Defendants. | CAUSE NO.: 3:18-CV-852-RLM-MGG |

OPINION AND ORDER

Kevin Bennett, a prisoner without a lawyer, filed a motion for a preliminary injunction. He seeks treatment for his back pain, including pain medication, physical therapy, and surgery, as well as treatment for his mental condition, including psychotropic medication and mental health therapy. "The purpose of preliminary injunctive relief is to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." Platinum Home Mortg. Corp. v. Platinum Fin. Group, Inc., 149 F.3d 722, 726 (7th Cir.1998). "In order to obtain a preliminary injunction, the moving party must show that: (1) they are reasonably likely to succeed on the merits; (2) no adequate remedy at law exists; (3) they will suffer irreparable harm which, absent injunctive relief, outweighs the irreparable harm the respondent will suffer if the injunction is granted; and (4) the injunction will not harm the public interest." Joelner v. Village of Washington Park, Illinois, 378 F.3d 613, 619 (7th Cir. 2004).

Facts Related to Back Pain

Mr. Bennett alleges that he tried to hang himself in his cell at the Westville Control unit in April 2018. ECF 2. He alleges that four correctional officers jumped on his back, handcuffed him, and escorted him to the medical unit. He alleges that, since that time, he has suffered tingling, numbness, and sharp back pain and has received inadequate treatment.

In response, the Warden provided a letter from Dr. Andrew Liaw and Mr. Bennett's medical records from April 2018 through November 2018. ECF 17-1. In the letter, Dr. Liaw says he has personally treated Mr. Bennett for neck pain and that Mr. Bennett never told him that he continued to have neck issues. Id. at 572.

According to the medical records, on May 11, 2018, Mr. Bennett complained to Dr. Liaw of throat pain due to the attempted hanging. Id. at 440-443. Dr. Liaw examined Mr. Bennett and ordered a cervical X-ray. Id. On May 14, another doctor ordered Tylenol for Mr. Bennett. Id. at 435-436, On May 16, Dr. Liaw noted a mass effect and ordered a CT scan, which Mr. Bennett received on May 25. Id. at 426-428. On June 15, Dr. Liaw saw Mr. Bennett for a chronic care appointment. Id. at 369-372. He had previously complained of chest pain and shortness of breath but reported that these symptoms had resolved. Id. On September 11, during a chronic care appointment, Dr. Liaw and Mr. Bennett discussed hypertension, hypothyroidism, and diet. Id. at 138-141.

In reply, Mr. Bennett states that he asked nurses for medication for back pain on daily basis during his time on suicide watch. ECF 35. He says that, on

2

May 11, 2018, he told Dr. Liaw about his neck pain and that he felt paralyzed from the neck down but that Dr. Liaw didn't take him seriously, replying, "If you were paralyzed, you wouldn't be able to walk." Mr. Bennett states that, on August 21, he told a nurse about his neck pain and that the nurse renewed his Tylenol prescription and told him to tell the doctor at his next chronic care visit.

Facts Related to Mental Condition

Mr. Bennett alleges that he suffers from paranoid schizophrenia, antisocial personality disorder, anxiety, and depression. ECF 2. He alleges that he needs psychotropic medication to cope with the conditions in solitary confinement. According to Mr. Bennett, medical staff discontinued his prescription for psychotropic medication in February 2018 and forced him to undergo psychotherapy without it.

In response, the Warden provided a letter from Dr. Monica Wala and Mr. Bennett's medical records from April 2018 through November 2018. ECF 17-1. In the letter, Dr. Wala says she is the lead psychologist at the Westville Correctional Facility and has reviewed the relevant medical records. Id. at 573-579. According to Dr. Wala, Mr. Bennett first arrived at the Westville Control Unit in August 2014 with a mental health diagnosis of depression. Soon after, he began to report auditory hallucinations, which were unsubstantiated. In June 2016, he tied a loose rope around his neck, which suggested suicidal ideation, and he was transferred to the mental health unit at Pendleton Correctional Facility, which offered intensive mental health services.

3

In Dr. Wala's letter, she included a July 2016 report from a psychologist at the Pendleton facility, Dr. Walter L. Campbell. ECF 17-1 at 574-578. In this detailed report, Dr. Campbell determined that Mr. Bennett was incorrectly diagnosed with schizoaffective disorder upon his arrival at Pendleton. He included several quotes from notes from Mr. Bennett's mental health records since 2012, including a recantation from the psychiatrist who made the initial schizoaffective disorder diagnosis. Dr. Campbell observed that, except for Mr. Bennett's reports of auditory hallucinations, no medical provider had ever documented observable symptoms of psychosis such as disorganized thought or attention to internal stimuli. He assessed that antisocial personality disorder provided a better explanation for Mr. Bennett's course of conduct, which included frequently exposing himself and masturbating in front of female staff, inappropriate language, malingering or other calculating behavior, suicide attempts, and hunger strikes.

Dr. Wala states that Mr. Bennett returned to the Westville Control Unit in June 2017 due to numerous reports of sexual misconduct and lack of compliance with treatment. Since his return, he has exhibited no signs of psychosis and has continued to engage in antisocial behavior, including exposing himself to female staff. His psychotropic medication was discontinued in March 2018 due to noncompliance and hoarding. Mental health staff see him at his cell on a weekly basis and see him out of his cell on a monthly basis, though Mr. Bennett has recently refused psychotherapy sessions, citing his belief that it would harm his ability to prevail in this case.

The medical records show that Mr. Bennett has regular access to mental health providers but that he often refuses to participate. The records also include several reports of continued misconduct but includes no observations of psychosis. Most recently, according to the therapy notes, Mr. Bennett participated in mental health therapy sessions in September and October 2018 and repeatedly asked for psychotropic medication. Id. at 107-169. On November 2, his counselor found that Mr. Bennett had made some progress and referred him to a psychiatrist to discuss medication. Id. at 85-87. On November 9, a nurse reported that Mr. Bennett had hoarded a Tylenol pill and used it in an attempt to get a second Norvasc pill, which he had been prescribed for hypertension. Id. at 74-75. From November 15 to November 27, Mr. Bennett refused to see his counselor twice. Id. at 37-43.

In reply, Mr. Bennett states that Dr. Wala refused to see him based on his history of sexual misconduct even though he was willing to allow a male correctional officer or counselor to sit in on the session. ECF 35. He says Dr. Wala told him that she didn't believe his reports of hallucinations and refused to give him psychotropic medication, crushed into powder form or otherwise. He also states that his out-of-cell therapy sessions don't take place in a confidential setting. He maintains that he has never touched, grabbed, or fondled any female staff during his time in prison and that the restrictions placed on him in regard to female staff are frivolous. He states that he never refused mental health treatment but also says he doesn't feel comfortable with his current mental

5

health counselor. He feels that the counselor doesn't take his complaints seriously because he hasn't gotten psychotropic medication.

Analysis

The court starts with whether Mr. Bennett has shown a reasonable likelihood of success on the merits. Under the Eighth Amendment, inmates are entitled to adequate medical care. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. Farmer v. Brennan, 511 U.S. 825, 834 (1994). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005). Deliberate indifference means that the defendant "acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." Board v. Farnham, 394 F.3d 469, 478 (7th Cir. 2005).

For a medical professional to be held liable for deliberate indifference to a serious medical need, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." Jackson v. Kotter, 541 F.3d 688, 697 (7th Cir.

2008). A mere disagreement with medical professionals about the appropriate course of treatment does not establish deliberate indifference, nor does negligence or even medical malpractice. Arnett v. Webster, 658 F.3d 742, 751 (7th Cir. 2011).

The medical records show that Dr. Liaw responded to the initial complaint of back pain by ordering X-rays and CT scans and that Mr. Bennett also received a prescription for Tylenol. The records also show that Mr. Bennett hasn't complained to Dr. Liaw of back or neck pain since May 11. Though he may have complained of back pain to nurses, he was directed to consult his doctor during a chronic care appointment, and no evidence suggests that he raised this issue with Dr. Liaw or anyone else with the authority to order appropriate treatment. Because the record contains no indication that medical staff acted with deliberate indifference to Mr. Bennett's back pain following the May 11 examination by Dr. Liaw, the court can't find that Mr. Bennett has reasonable likelihood of success on the merits with respect to his need for back treatment.

The medical records provide substantial support for Dr. Wala's statements about Mr. Bennett's access to mental health treatment, his history of misconduct, and her reasoning for the discontinuation of his psychotropic medication. Even if, as Mr. Bennett asserts, the accusations of hoarding are unfounded, he doesn't dispute the absence of any documentation of observable signs of psychosis by a medical professional since 2012. The absence of any objective signs of psychosis provides ample justification for discontinuing

medication as well as Dr. Wala's reluctance to credit Mr. Bennett's complaints about hallucinations.

Dr. Wala's refusal to meet with Mr. Bennett outside of the presence of male correctional officers or otherwise is reasonable in light of his history of sexual misconduct. Mr. Bennett's complaints about confidentiality are perplexing given that he also says he invited the presence of correctional staff in an effort to schedule an appointment with Dr. Wala. ECF 35 at 3. Mr. Bennett further represents that he is uncomfortable with his current mental health counselor, in essence, because he has not been prescribed psychotropic medication. But as set forth above, the decision regarding his medication is well-supported and is thus not a reasonable basis for refusing therapy sessions. After reviewing the evidence, it appears that the discontinuation of psychotropic medication was based on the mental health staff's sound medical judgment and that Mr. Bennett has access to mental health therapy. As a result, the court can't find that Mr. Bennett has reasonable likelihood of success on the merits with respect to his mental health.

The court must also consider whether Mr. Bennett will suffer irreparable harm which, without injunctive relief, outweighs the irreparable harm the defendants will suffer if the injunction is granted. A court has limited authority to order injunctive relief in prisoner cases: "the remedial injunctive relief must be narrowly drawn, extend no further than necessary to correct the violation of the Federal right, and use the least intrusive means necessary to correct the violation of the Federal right." Westefer v. Neal, 682 F.3d 679 (7th Cir. 2012).

If the court decided that Mr. Bennett was entitled to injunctive relief, the remedy would be to order the Warden to arrange for medical professionals to assess Mr. Bennett's back and mental condition. Mr. Bennett already receives a chronic care appointment with a physician once every three months and that nurses and mental health staff regularly respond to his frequent requests for medical attention. ECF 17-1 at 5-21. In other words, Mr. Bennett has access to medical professionals even without a court order, so the court concludes that Mr. Bennett will not suffer additional harm absent injunctive relief. In sum, Mr. Bennett hasn't shown a likelihood of success on the merits and hasn't demonstrated that he will suffer irreparable harm absent injunctive relief, and the motion for a preliminary injunction is denied.

As a final matter, Mr. Bennett has filed a letter, stating that, since he filed this lawsuit, correctional officers have unplugged the television in his cell and transferred him to a cell in a noisier area. ECF 16. He says they told him that their supervisors are mad at him and that they would write him up if he did anything wrong. If Mr. Bennett believes that correctional staff are engaging in unlawful retaliation against him for First Amendment activity and seeks a remedy from this court, he can raise these claims in a separate lawsuit.

For these reasons, the court DENIES the motion for a preliminary injunction (ECF 4).

SO ORDERED on January 23, 2019

s/ Robert L. Miller, Jr.
JUDGE
UNITED STATES DISTRICT COURT