UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| KEVIN BENNETT,<br><br>  Plaintiff,<br><br>  v.<br><br> MARK SEVIER, et al.,<br><br>  Defendants. | CAUSE NO. 3:18-CV-852-RLM-MGG |

OPINION AND ORDER

Kevin Bennett, proceeding pro se, proceeds on six claims against fourteen defendants as follows:

- An Eighth Amendment claim of deliberate indifference for money damages against Barbara Eichmann, Gary Durak, Monica H. Wala, and Michelle Boren for providing him with no psychotropic medication and inadequate mental health therapy since February 2018;

- An Eighth Amendment claim of deliberate indifference for money damages against Lester Jones, Erin Mallon, and Janice West for their inadequate initial response to the suicide attempt on April 24, 2018;

- An Eighth Amendment claim of deliberate indifference for money damages against Janice West, Katherine Hutchinson, and Andrew Liaw for inadequate treatment of the stomach pain and back pain caused by the suicide attempt since April 24, 2018;

- An Eighth Amendment claim of deliberate indifference for money damages against Wexford of Indiana, LLC, for maintaining a policy or practice of denying or delaying medical care for nerve damage to save money;

- An Eighth Amendment claim for money damages against Sean Flaherty, Sergeant Renhack, Erin Mallon, and William Brown for using excessive force on April 24, 2018; and

- A claim for injunctive relief against Mark Sevier in his official capacity to obtain medical treatment for his mental condition and his back as required by the Eighth Amendment.

Defendants Dr. Eichman, Dr. Durak, Counselor Wala, Therapist Boren, Nurse West, Nurse Hutchinson, Dr. Liaw, and Wexford (the "medical defendants") filed a motion for summary judgment on all claims against them. Defendants Sergeant Flaherty, Sergeant Renhack, Officer Mallon, Officer Brown, and Warden Sevier (the "State defendants") filed a separate motion for summary judgment on all claims, except for the claim of excessive force.

The defendants also provided Mr. Bennett with the summary judgment notice required by N.D. Ind. L.R. 56-1 and a copy of both Federal Rule of Civil Procedure 56 and Local Rule 56-1. ECF 126, ECF 133. The notice informed Mr. Bennett of the consequences of forgoing a response. It explained that, unless he disputed the facts presented by the defendants, the court could accept those facts as true. See Fed. R. Civ. P. 56(e). It further advised that a lack of response could result in the dismissal of his case. See Fed. R. Civ. P. 56(a).

Mr. Bennett filed a response to the State defendants' motion for summary judgment. ECF 136. He didn't file a response to the medical defendants' motion but instead filed three motions to extend the response deadline. ECF 134; ECF 137, ECF 140. The court gave him six additional weeks to prepare a response and cautioned that additional extensions of time were not likely to be granted. ECF 131. On April 20, 2020,

three weeks after the deadline expired, he filed a motion to stay this case indefinitely, citing limited access to the public library due to the coronavirus pandemic. ECF 142. As of the date of this order, this case has been pending for nearly two years, and the motions for summary judgment have been pending for more than eight months. ECF 2, ECF 124, ECF 130. Mr. Bennett has been notified of the elements of his claims and summary judgment procedures. ECF 6, ECF 126, ECF 133. He has also been provided with substantial discovery, including his medical records, answers to interrogatories, requests for admissions, and his deposition transcript. See e.g., ECF 17-1, ECF 72, ECF 83, ECF 109, ECF 129.

In sum, Mr. Bennett has had ample time and information to prepare his response to the medical defendants' motion for summary judgment and was expressly warned that he was unlikely to receive further extensions of time. On this basis, the motion for a stay is denied, and the court will rule on the summary judgment motion without the benefit of a response. That said, the court has reviewed the complaint and the transcript of Mr. Bennett's deposition and will consider the contentions presented in these filings in resolving the summary judgment motions.

## FACTS

Dr. Wala is the lead psychologist at the Westville Correctional Facility and has reviewed Mr. Bennett's mental health records. ECF 17-1 at 573-79; ECF 132-6. According to Dr. Wala, Mr. Bennett first arrived at the Westville Control Unit in August 2014 with a mental health diagnosis of depression. Soon after, he began to report auditory hallucinations, which were unsubstantiated. In June 2015, Mr. Bennett tied a loose rope

around his neck, which suggested suicidal ideation, and he was transferred to the mental health unit at Pendleton Correctional Facility which offered intensive mental health services. In June 2017, Mr. Bennett returned to the Westville Control Unit due to numerous reports of sexual misconduct and lack of compliance with treatment.

In July 2016, Dr. Campbell, a psychologist at the Pendleton facility, prepared a report on Mr. Bennett. ECF 17-1 at 574-78. In this detailed report, Dr. Campbell determined that Mr. Bennett was incorrectly diagnosed with schizoaffective disorder upon his arrival at Pendleton. He included several quotes from notes from Mr. Bennett's mental health records since 2012, including a recantation from the psychiatrist who made the initial schizoaffective disorder diagnosis. Dr. Campbell observed that, except for Mr. Bennett's reports of auditory hallucinations, no medical provider had ever documented observable symptoms of psychosis such as disorganized thought or attention to internal stimuli. He assessed that antisocial personality disorder[1] provided a better explanation for Mr. Bennett's course of conduct, which included frequently exposing himself and masturbating in front of female staff, inappropriate language, malingering or other calculating behavior, suicide attempts, and hunger strikes.

---

[1] The Mayo Clinic defines antisocial personality disorder as follows:

Antisocial personality disorder, sometimes called sociopathy, is a mental disorder in which a person consistently shows no regard for right and wrong and ignores the rights and feelings of others. People with antisocial personality disorder tend to antagonize, manipulate or treat others harshly or with callous indifference. They show no guilt or remorse for their behavior.

Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/antisocial-personality-disorder/symptoms-causes/syc-20353928, (last visited August 6, 2020).

Dr. Eichman, a psychiatrist, submitted an affidavit attesting that when Mr. Bennett returned to the Westville Control Unit, his active prescriptions for psychiatric medications included Remeron and his diagnoses consisted of antisocial personality disorder and anxiety. ECF 132-2. On September 19, 2017, she prescribed Zoloft. On February 2, 2018, correctional staff searched Mr. Bennett's cell and found twenty pills in his cell, including ten Remeron pills. On March 11, correctional staff searched the cell again and found multiple pills, including Remeron and Zoloft. After this second incident, Dr. Eichman weighed the benefits of the medication against Mr. Bennett's refusal to take them as prescribed and the risks associated with his pattern of hoarding, including harmful side effects and drug trafficking within the correctional facility. She discontinued the medication on March 18. Correctional staff found dozens of pills in Mr. Bennett's property on April 3. ECF 72-6 at 321-22.

On April 24, Mr. Bennett told Michelle Boren, a mental health counselor, that he heard voices telling him to commit suicide and that he would hang himself if he had to return to his cell. ECF 2 at 7. Counselor Boren immediately placed him on a temporary mental health hold on strip cell status with an inmate companion to monitor him. Id. Mr. Bennett later swallowed some pills and told the inmate companion that he intended to hang himself. Id. At 7:00 p.m., the inmate companion informed Officer Mallon. ECF 2-2 at 14. After Officer Mallon left to contact medical staff, Mr. Bennett swallowed more pills and tried to hang himself. ECF 132-8 at 33. At 7:15 p.m., Officer Mallon and Nurse West arrived at the cell and found Mr. Bennett lying on the floor with a string made from a torn sheet tying his neck to his bed. ECF 2-2 at 14. Nurse West took his vital

5

measurements and he greeted her with a smile. ECF 132-4. She found no significant injuries and saw no need for immediate medical care. Id.

While lying on the floor in his cell, Mr. Bennett didn't respond to Officer Mallon's orders. ECF 2-2 at 14. At 7:40 p.m., Officer Mallon told Lieutenant Jones, who called for additional assistance, and Sergeant Renhack, Sergeant Flaherty, and Officer Brown responded. Id. At 7:44 p.m., the correctional officers arrived at Mr. Bennett's cell and escorted him to the medical unit; the parties dispute whether these officers used excessive force in doing so. Id. At the medical unit, Mr. Bennett complained about paralysis and pain throughout his body. ECF 132-8 at 7. Nurse West examined him and saw no abnormalities except a red line on his neck and saws him walking to his cell on his own accord. ECF 132-4. She concluded that he had no significant physical injuries but notified mental health staff of the suicide attempt. Id. At 7:56 p.m., correctional staff returned Mr. Bennett to his cell and searched it again. ECF 2-2 at 14.

During the following weeks, Mr. Bennett complained to medical staff regarding pain but often refused to cooperate with them. For example, on April 25, he refused to discuss the suicide attempt when with Counselor Boren and told her he simply fell out of bed. ECF 72-6 at 351-52. On April 26, he threatened to murder a nurse and her family. Id. at 362. On April 28, correctional staff offered to take him to the medical unit, but he refused. Id. at 380-81. On May 4 and May 5, Mr. Bennett refused to allow nurses to measure his vital statistics and refused meals as part of a hunger strike. ECF 72-1 at 24-27. Nurse Hutchinson scheduled an appointment with Mr. Bennett for triage on May 8, but another nurse cancelled it. Id. at 40-41. On May 11, Mr. Bennett complained to Dr.

6

Liaw about throat pain and difficulty swallowing. Id. at 43-46. Dr. Liaw observed minor weight gain but no abrasions, swelling, redness in the neck or eyes, or vocal issues. He ordered an X-ray, which revealed a mass effect in the neck. Id. at 57-58. To follow up, Dr. Liaw ordered a CT scan, which revealed no abnormalities. Id.; ECF 132-1. From April 24 to May 11, Nurse Hutchison interacted with Mr. Bennett on many occasions but didn't see objective signs of pain or any emergency medical issues. ECF 132-5.

At all relevant times, the mental health staff had an individualized treatment plan for Mr. Bennett that included weekly visits from mental health staff, though Mr. Bennett often refused them. See e.g., ECF 72-1 at 17-19, 34-36, 53-54, 105-06, 203-04, 214-16. Mental health staff tried to pair Mr. Bennett with male staff members due to his pattern of inappropriate behavior in the presence of female staff. ECF 132-6. Dr. Durak, Dr. Wala, and Counselor Boren didn't have the authority to prescribe medication, and Counselor Boren didn't have the authority to diagnose Mr. Bennett. ECF 132-3, ECF 132-6, ECF 132-7. In the opinion of Dr. Durak and Dr. Wala, antisocial personality disorder explains Mr. Bennett's conduct, and he has no significant mental illness. ECF 132-6, ECF 132-7. Mr. Bennett notified the court of his release from custody on November 4, 2019. ECF 120.

## STANDARD OF REVIEW

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. In determining whether summary judgment is appropriate, the deciding court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Ogden v. Atterholt, 606 F.3d 355, 358 (7th Cir. 2010). "However, our favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture." Fitzgerald v. Santoro, 707 F.3d 725, 730 (7th Cir. 2013) (citing Harper v. C.R. Eng., Inc., 687 F.3d 297, 306 (7th Cir. 2012)).

## ANALYSIS

Mr. Bennett asserts Eighth Amendment claims of deliberate indifference to serious medical needs against the defendants. Under the Eighth Amendment, inmates are entitled to adequate medical care. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To establish liability under the Eighth Amendment, a prisoner must show: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to his medical need. Farmer v. Brennan, 511 U.S. 825, 834 (1994). A "serious" medical need is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention, and if untreated could result in further significant injury or unnecessary pain, and that significantly affects the person's daily activities or features chronic and substantial pain. Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005).

8

Deliberate indifference is a high standard, and is "something approaching a total unconcern for a prisoner's welfare in the face of serious risks," or a "conscious, culpable refusal" to prevent harm. Duane v. Lane, 959 F.2d 673, 677 (7th Cir. 1992). "[C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." Board v. Farnham, 394 F.3d 469, 478 (7th Cir. 2005). For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." Jackson v. Kotter, 541 F.3d 688, 697 (7th Cir. 2008). As the Seventh Circuit has explained:

> [M]edical professionals are not required to provide proper medical treatment to prisoners, but rather they must provide medical treatment that reflects professional judgment, practice, or standards. There is not one proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field. A medical professional's treatment decisions will be accorded deference unless no minimally competent professional would have so responded under those circumstances.

Id. at 697-698. Negligence, incompetence, or even medical malpractice do not amount to deliberate indifference. Pierson v. Hartley, 391 F.3d 898, 902 (7th Cir. 2004); Walker v. Peters, 233 F.3d 494, 499 (7th Cir. 2000).

A prisoner isn't entitled to demand specific care, nor is he entitled to the "best care possible." Forbes v. Edgar, 112 F.3d 262, 267 (7th Cir. 1997). If the defendants have provided some level of care for a prisoner's medical condition, to establish deliberate indifference the prisoner must show that "the defendants' responses to [his condition] were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." Hayes v. Synder, 546 F.3d 516, 524 (7th Cir. 2008). A mere disagreement with medical professionals about the appropriate treatment doesn't amount to an Eighth Amendment violation. Ciarpaglini v. Saini, 352 F.3d 328, 331 (7th Cir. 2003).

Mr. Bennett asserts an Eighth Amendment claim of deliberate indifference against the defendants for discontinuing his prescriptions for psychotropic medication since February 2018. The record demonstrates that only Dr. Eichman had the authority to prescribe such medication and that she decided to discontinue them for Mr. Bennett after weighing the risk of harm to him and other inmates given his pattern of hoarding medication against the limited benefit they provided due to his noncompliance. Because Dr. Eichman exercised her medical judgment in deciding to discontinue the medication, she is entitled to summary judgment on the claim against her.

Mr. Bennett asserts an Eighth Amendment claim against Dr. Durak, Dr. Wala, and Counselor Boren for providing him with inadequate mental health therapy. The record indicates that Mr. Bennett received regular, frequent visits from mental health staff for therapy sessions. Mr. Bennett maintains his mental health therapy was inadequate because it didn't result in psychiatric prescriptions or a transfer from

restrictive housing. The record reflects that these defendants had sound reasoning for not issuing such recommendations. They attributed his behavior to antisocial personality disorder and didn't believe that he had a serious mental illness; these professional opinions were consistent with the medical records and the opinions of Mr. Bennett's prior treatment providers. He also complains that Dr. Wala didn't personally visit his cell, but other mental health staff remained available to Mr. Bennett, so it's unclear why he believes that her understandable reluctance to visit his cell constitutes deliberate indifference.

Mr. Bennett contends that Counselor Boren acted with deliberate indifference by not moving him to an observation cell at his insistence on April 24, 2018, when he told her that he intended to commit suicide, but he conceded that she placed him on a temporary mental health hold with an inmate companion on strip cell status. Mr. Bennett wasn't entitled to demand specific care, and no reasonable jury could characterize the substantial measures implemented by Counselor Boren as "something approaching a total unconcern for a prisoner's welfare in the face of serious risks." Duane v. Lane, 959 F.2d 673, 677 (7th Cir. 1992). Mr. Bennett also alleges that he asked for Dr. Durak but couldn't see him that day, but Mr. Bennett conceded at his deposition that he discussed his mental condition with Dr. Durak at his cell. ECF 132-8 at 22-23. Consequently, the record doesn't support the allegations that these defendants acted with deliberate indifference on the date of the suicide attempt.

Mr. Bennett accuses Dr. Durak, Dr. Wala, and Counselor Boren of falsifying his medical records in connection with his mental health treatment. He refers to instances

in which those defendants represented that he received therapy sessions and prepared an individualized treatment plan for him. He also refers to instances when they didn't fully credit his representations about his mental condition. At other times, Mr. Bennett has conceded that he has received therapy sessions (See e.g., ECF 35 at 3-4, ECF 132-8 at 10-13, 22-23, 27), and his medical records indicate that mental health staff prepared an individualized treatment plan and made many adjustments to it in response to Mr. Bennett's behavior. To the extent the defendants declined to credit his subjective complaints, the record reflects that they did so due to the lack of objective corroboration and with knowledge of his medical history and his pattern of inappropriate behavior. Because the record doesn't reflect that Dr. Durak, Dr. Wala, or Counselor Boren acted with deliberate indifference to Mr. Bennett's mental condition, the motion for summary judgment is granted with respect to the claim against them.

Mr. Bennett asserts an Eighth Amendment claim of deliberate indifference for against Lieutenant Jones, Officer Mallon, and Nurse West for their inadequate initial response to the suicide attempt on April 24, 2018. He contends that Officer Mallon and Lieutenant Jones should have responded to his suicide attempt more quickly and that Nurse West should have tested his blood to determine what medication he had ingested and prescribed him pain medication. The record reflects that the inmate companion notified Officer Mallon of the suicide attempt at 7:00 p.m. before Mr. Bennett had tried to hang himself. He called medical staff, and Nurse West arrived fifteen minutes later, examined Mr. Bennett, and found no need for immediate medical care. Her assessment was reasonable given that his vital measurements were normal, that he smiled when

12

she approached him, and that he attempted to hang himself in a particularly ineffective manner. It was also reasonable for Officer Mallon to defer to Nurse West, given these circumstances and her medical expertise. When it became apparent that Mr. Bennett wouldn't respond to orders, Officer Mallon contacted Lieutenant Jones, who contacted additional officers for assistance, and they took him to the medical unit for an examination. Nurse West observed Mr. Bennett walk on his own accord in a stable condition, confirmed her initial findings regarding Mr. Bennett's physical condition, but notified mental health staff about the suicide attempt. Correctional staff returned Mr. Bennett to his cell and searched it, and the entirety of these events took place within the course of an hour. In sum, the record reflects that these defendants responded reasonably to the suicide attempt, and the motion for summary judgment is granted with respect to these defendants on the Eighth Amendment claim of deliberate indifference to serious medical needs.

Mr. Bennett asserts an Eighth Amendment claim of deliberate indifference against Nurse Hutchinson, and Dr. Liaw for inadequate treatment of the stomach pain and back pain caused by the suicide attempt. He contends that Nurse Hutchinson disregarded his need for medical attention by not assessing his injuries. The record reflects that Nurse Hutchinson saw Mr. Bennett at his cell several times after the suicide attempt. Though the frequent refusals to cooperate with medical staff frustrated their efforts to assist him, Nurse Hutchinson saw no objective signs of serious distress or pain. Mr. Bennett further contends that Dr. Liaw should have seen him sooner, but the record contains nothing to suggest that Dr. Liaw knew of Mr. Bennett's medical

condition before the scheduled appointment on May 11, 2018. Even if he knew, the record contains no medical evidence to suggest that a timelier appointment was needed or that Mr. Bennett suffered harm as a result of the delay. Consequently, the motion for summary judgment is granted with respect to these defendants.

Mr. Bennett asserts an Eighth Amendment claim of deliberate indifference against Wexford of Indiana, LLC, for maintaining a policy or practice of denying or delaying medical care for nerve damage to save money. For Section 1983 claims, corporate liability exists only "when execution of a [corporation's] policy or custom . . . inflicts the injury." Calhoun v. Ramsey, 408 F.3d 375, 379 (7th Cir. 2005). A corporation can be held liable for "an express policy that, when enforced, causes a constitutional deprivation." Id. Absent an unconstitutional policy, corporate liability may be established with a showing of "a widespread practice that, although not authorized by written law or express [corporate] policy, is so permanent and well settled as to constitute a custom or usage with the force of law." McTigue v. City of Chicago, 60 F.3d 381, 382 (7th Cir. 1995). The policy or custom must be the "moving force behind the deprivation of his constitutional rights." Johnson v. Cook Cty., 526 F. App'x 692, 695 (7th Cir. 2013). The record contains no evidence that Mr. Bennett suffered nerve damage or that Wexford maintained a policy or practice of denying or delaying medical care for such injures. Therefore, the motion for summary judgment is granted with respect to this defendant.

Finally, Mr. Bennett asserts a claim for injunctive relief against Mark Sevier in his official capacity as the Warden of the Westville Correctional Facility to obtain medical

treatment for his mental condition and his back as required by the Eighth Amendment. Mr. Bennett has notified the court that he no longer resides at the Westville Correctional Facility and is no longer in the physical custody of the Indiana Department of Correction, ECF 116, so the claim for injunctive relief is moot. See City of Los Angeles v. Lyons, 461 U.S. 95, 109 (1983); Higgason v. Farley, 83 F.3d 807, 811 (7th Cir. 1996). In conclusion, Mr. Bennett may proceed on the Eighth Amendment claim for against Sean Flaherty, Sergeant Renhack, Officer Mallon, and Officer Brown for using excessive force, but no other claims remain.

For these reasons, the court:

(1) DENIES the motion to stay (ECF 142);

(2) GRANTS the motions for summary judgment (ECF 124, ECF 130); and

(3) DISMISSES Warden Sevier, Lieutenant Jones, Wexford of Indiana, Dr. Eichman, Dr. Wala, Dr. Durak, Counselor Boren, Dr. Liaw, Nurse Hutchison, and Nurse West.

SO ORDERED on August 10, 2020

                                              s/ Robert L. Miller, Jr.
                                              JUDGE
                                              UNITED STATES DISTRICT COURT